**In re REACH, McCLINTON & CO., INC., L. Andrew Bernheim, Debtors.**

**Jack BIRNBERG, as Trustee for Reach, McClinton & Co., Inc., and Santo J. Lalomia, as Trustee for L. Andrew Bernheim, Plaintiffs–Appellants,**

v.

**RANCHO La COSTA, La Costa Hotel & Spa, Harold F. Tebbets, Martha L. Moor, Una A. Clark, Mervyn Adelson, J.A. Donnelley, Burton L. Kramer, Moe B. Dalitz, Allard Roen, Benjamin Alpert, Irwin Molasky, Equitable Life Assurance Society, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, William Randall, La Costa Products International, Inc., Lorimar Inc., La Costa Land Co., Daon Corporation, John Doe 1–10, XYZ Partnerships 1–10, and XYZ Corporations 1–10, Defendants–Appellees.**

Civ. A. No. 88–4968 (JCL).

United States District Court, D. New Jersey.

June 9, 1989.

---

Bernard Schenkler, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J., for plaintiffs-appellants.

Walter J. Fessler, Lum, Hoens, Abeles, Conant & Danzis, Roseland, N.J., for defendants-appellees.

OPINION

LIFLAND, District Judge.

Appellants, the plaintiffs in this adversary proceeding before the bankruptcy court, appeal from the bankruptcy court's July 27, 1988 order granting appellees-defendants' motion for summary judgment and denying plaintiffs-appellants' cross-motion for summary judgment. This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a). For the reasons set forth below, the court reverses the order below and remands to the bankruptcy court for further proceedings.

Background

This adversary proceeding was brought by the trustees of appellants' respective Chapter 11 estates to redress an alleged violation of the preemptive rights held by Reach, McClinton & Company [hereinafter "Reach"] as a shareholder of Rancho La

Costa, Inc. [hereinafter "Rancho"] by Rancho and related entities and persons. Appellant L. Andrew Bernheim [hereinafter "Bernheim"] is the sole shareholder of Reach. The complaint was filed on December 11, 1985.

On July 7, 1988 the bankruptcy court decided cross-motions for summary judgment and supplied an oral opinion. The bankruptcy court granted summary judgment to the appellees on the ground that appellants' claims were time-barred, and therefore did not decide the actual merits of the case. The bankruptcy court found the following facts to be undisputed, a finding which is not clearly erroneous and which this court will rely on for purposes of deciding this appeal:

1) Rancho is a Nevada corporation.

2) Rancho originally authorized a limited number of shares of stock.

3) Reach was an owner of stock in Rancho.

4) The individual defendants were members of and comprised Rancho's board of directors.

5) Limitations in the form of moratoria were placed on the development of real property owned by Rancho for many years.

6) In approximately 1970 it became necessary for Rancho to restructure its finances, and during this refinancing the corporation required that certain guarantees be given by persons wishing to subscribe to debentures with a feature allowing the subscribers to convert to additional stock holdings. The bankruptcy court declined to find a date for purposes of the motions.

7) Those who were issued the debenture increased their personal guarantees to the pension fund to $35 million.

8) Reach knew of and expressly agreed to the debenture issuance in approximately 1970. Reach's owner at that time, Daniel M. Bernheim, executed on behalf of Reach the agreement authorizing the issuance. Reach was advised of this issuance at the time of the issuance. Reach did not subscribe to any further stock or debentures at that time, however, and did not execute a guarantee.

9) Rancho's bylaws required Rancho to give notice of the right to exercise preemptive rights, but Rancho did not give written notice of this right.

10) All of the actions of Rancho took place in California, including the Rancho board meeting which approved the debentures.

11) The business of Rancho was operated in California.

12) Most of the actual contacts among the parties occurred in California.

13) The debentures were held in California and were converted in California.

14) Daniel M. Bernheim spent significant amounts of time in California.

15) Daniel M. Bernheim died on September 10, 1977.

16) For the purposes of the summary judgment motions L. Andrew Bernheim succeeded to full ownership and control of Reach. He also spent significant amounts of time in California, and both he and Reach regularly received mail from California.

17) On March 22, 1978 Rancho passed a resolution increasing the number of shares, to allow for the issuance of new shares that resulted from the conversion of the debentures issued in connection with the restructuring of approximately 1970.

18) Bernheim had knowledge of this issuance of new shares by no later than December 31, 1981. This date is arbitrarily set because Bernheim claims he first acquired knowledge by reading Rancho's December 31, 1978 corporate statement sometime in 1981. The actual date may be sooner because Bernheim's counsel conceded that Bernheim received the statement sometime in 1980.

19) Footnote 10 of the corporate statement would put any reasonable person on notice of an irregularity and would require that person to inquire further.

20) Reach was qualified to do business in California, did do business in California, and appointed an agent for service of process in California.

21) All business dealings between Reach and Rancho took place in California.

22) Reach's principal place of business may have been in New York.

23) Reach was authorized to and did maintain an office in New Jersey.

24) Reach was a corporation of the State of New Jersey.

25) Reach conducted business for or on behalf of foreign firms, and conducted business with many firms in the United States.

26) Reach was a national business with offices in Chicago, Atlanta, Boston, Los Angeles, Newark, and New York.

After stating the controlling standards for summary judgment, the bankruptcy court addressed and rejected appellants' argument that New Jersey's tolling statute for persons who are not New Jersey residents, N.J.Stat.Ann. § 2A:14–22, extended the date on which the limitations period began to run to August 3, 1983, the date when the New Jersey Supreme Court struck down that statute as unconstitutional in *Coons v. Honda Motor Co.*, 94 N.J. 307, 463 A.2d 921 (1983) (*Coons* I), because the New Jersey Supreme Court held that this decision was to be applied prospectively only in *Coons v. Honda Motor Co.*, 96 N.J. 419, 476 A.2d 763 (1984) (*Coons* II). The bankruptcy court found appellants' argument to be an erroneous reading of *Coons* II, since the court in *Coons* II explicitly "excluded from the scope of the *Coons* I ruling only those actions already commenced on August 3, 1983," 96 N.J. at 434, 476 A.2d 763, a date well before the filing of the instant suit. Tr. of Decision at 9.[1]

The bankruptcy court then addressed the argument by appellees that California's statute of limitations controlled and that under California's statute of limitations the case was time-barred. Appellants argued that New Jersey's statute of limitations,

not California's, controlled, and that under New Jersey's statute of limitations the case was not time-barred. The bankruptcy court observed that prior to the New Jersey Supreme Court's decision in *Heavner v. Uniroyal Inc.*, 63 N.J. 130, 305 A.2d 412 (1973), New Jersey treated statutes of limitation as procedural and accordingly always applied the law of the forum. In *Heavner*, however, the court modified this approach in favor of a test whereby the New Jersey statute would not apply if New Jersey did not have a substantial interest in the matter. Tr. of Decision at 11–12. The bankruptcy court focused its attention on defendants' activity within the forum state of New Jersey. *Id.* at 12.

The bankruptcy court found that the cause of action arose in California and not New Jersey because "the last significant event which gave rise to the cause of action was the issuance of the additional stock on March 22, 1978." *Id.* The bankruptcy court then observed that it could not "find that fair play and substantial justice suggest that a company operating in California in a California situation is not entitled to the protection of the California statute of limitations." *Id.*

The bankruptcy court distinguished the cases of *Dent v. Cunningham,* 786 F.2d 173 (3d Cir.1986), and *Warner v. Auberge Gray Rocks Inn, Ltee.*, 827 F.2d 938 (3d Cir.1987), which held that the New Jersey statute of limitations applied, by noting that unlike the plaintiffs in those cases, who were individuals, Reach as a corporation was subject to California's long-arm statute and was thus subject to the jurisdiction of California courts. Tr. of Decision at 13–15. The bankruptcy court then recognized a five-part test, set forth in *Heavner* and summarized in *O'Keeffe v. Snyder*, 83 N.J. 478, 490, 416 A.2d 862 (1980), under which a statute of limitations other than New Jersey's statute would be applied: (1) the cause of action arose in the

---

**1.** The bankruptcy court criticized appellants for failing to set forth a specific date from which the limitations period would begin to run, tr. of Decision at 7, but found that "there is no question in my mind that the minute note ten [of Rancho's December 31, 1978 corporate state-

ment] was made available to L. Andrew Bernheim ... he had to know that something was amiss with respect to any preemptive rights he might have had." *Id.* at 8 (supporting citations omitted).

other state; (2) the parties are all present in and amenable to jurisdiction in the other state; (3) New Jersey has no substantial interest in the matter; (4) the substantive law of the other jurisdiction is applicable; and (5) the limitations period of the other jurisdiction has expired at the time of the commencement of the suit in New Jersey.

The bankruptcy court found that these requirements were met in this case. Tr. of Decision at 14–16. Critical on this appeal is the bankruptcy court's statement regarding New Jersey's interest in this matter:

> New Jersey has no substantial interest in the matter. Mr. Hirsch in oral argument made the argument that any domiciliary per force raises the issue of substantial interest in the matter. If the mere fact of being a domiciliary corporation, particularly a multi-state corporation, gives New Jersey substantial interest, I suggest that plaintiff could have started this suit in any one of the other states in which Reach was licensed to do business and apply that statute of limitations. It seems to me that that approach is one which encourages forum shopping. And forum shopping is looked upon with a jaundiced eye by the law.

*Id.* at 15–16. The bankruptcy court, anticipating a possible appeal from its decision, concluded its decision with some helpful guidance for a reviewing court:

> It is agreed that the California statute of limitations is three years. It is agreed that the New Jersey statute of limitations concerning fraud actions is six years. I find that the California statute of limitations and California substantive law should appropriately be applied in this case. I might indicate that if the New Jersey law does apply, and I make this finding only for purposes of review if it is appropriate, if the New Jersey law did apply, there is a genuine issue of material fact concerning when the plaintiff knew, or should have known, or had sufficient facts to make further inquiry. And that would preclude the granting of summary judgment in favor of the defendants. Since I have found, however, that the California law and the California statute of limitations applies, summary

judgment must be granted in favor of the ... defendant and against the plaintiff. The action by the cross-motion for summary judgment by the plaintiff against the defendant is, in fact, denied, both because of the finding with respect to the initial motion, and also because I find that there are genuine issues concerning material fact with respect to plaintiff's action against the defendant, including the nature of its claim—including, but not limited to, the nature of its claim, the knowledge of the parties, the time of the knowledge of the parties, and, of course, would be subject to all the defenses already raised by the defendants.

*Id.* at 17–18.

### Discussion

Bankruptcy Rule 8013 states:

> On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

The court must apply the "clearly erroneous" standard to the bankruptcy court's findings of fact; the bankruptcy court's conclusions of law, however, are subject to plenary review by this court. *See, e.g., In re Longardner & Associates, Inc.*, 855 F.2d 455, 459 (7th Cir.1988); *Matter of Dunes Casino Hotel*, 63 B.R. 939 (D.N.J. 1986). The issues raised on appeal are (1) whether the bankruptcy court erred in granting appellees' motion for summary judgment dismissing the complaint with prejudice, and (2) whether the court erred in denying appellants' cross-motion for summary judgment.

The difficulty in deciding whether California's three-year statute of limitations for fraud, Calif.Code of Civ.Proc. § 338(d), or New Jersey's six-year statute, N.J.Stat. Ann. § 2A:14–1, should be applied in this case, is that *Heavner* and the cases inter-

preting *Heavner* involved plaintiffs whose contacts with New Jersey could be easily evaluated. The facts surrounding the contacts of the appellants with New Jersey in this case are bitterly disputed, however.[2] In addition, Reach is a New Jersey corporation whose principal place of business is outside of New Jersey. Neither of the parties has cited any cases applying *Heavner* to a scenario where the plaintiff was a New Jersey corporation but had its principal place of business in another state, nor has this court found any such cases in its research on this issue. In this sense this case is one of first impression. However, the legal principles stated by the New Jersey Supreme Court and the Third Circuit lead the court to conclude that the bankruptcy court erred in granting summary judgment to defendants by applying California's limitations period.

■ As a federal court interpreting a conflicts of law question this court must apply the law prevailing in the forum state, here New Jersey. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The court in *Heavner* outlined the criticism leveled by scholars and courts at a law-of-the-forum rule for applying statutes of limitation, expressed its own disatisfaction with a law-of-the-forum rule, and announced:

> We are convinced that the time has come, for the reasons previously outlined, to discard the mechanical rule that the limitations law of this state must be employed in every suit on a foreign cause of action. We need go no further now than to say that when the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the

substantive law of the foreign state is to be applied, and its limitation period has expired at the time suit is commenced here, New Jersey will hold the suit barred. In essence, we will "borrow" the limitations law of the foreign state. We presently restrict our conclusion to the factual pattern identical with or akin to that in the case before us, for there may well be situations involving significant interests of this state where it would be inequitable or unjust to apply the concept we here espouse.

63 N.J. at 140–41, 305 A.2d 412. The New Jersey Supreme Court has never expanded its holding beyond the scenario where a conjunction of the five above-stated elements were present. In *O'Keeffe v. Snyder*, 83 N.J. 478, 490, 416 A.2d 862 (1980), while noting that the court in *Heavner* had "discarded the mechanical rule that the statute of limitations of the forum must be employed in every suit on a foreign cause of action," the court stated that "[t]he *Heavner* rule provides a *limited and special exception* to the general rule that the rule of the forum determines the applicable period of limitations." (emphasis added; citation omitted).

Appellees and the bankruptcy court found the holding of the court in *Eger v. E.I. Du Pont DeNemours Co.*, 110 N.J. 133, 539 A.2d 1213 (1988) to be persuasive in this case. Tr. of Decision at 14. This court disagrees. *Eger*, which held that South Carolina's workers' compensation law and not New Jersey's would govern in the factual situation where South Carolina's legitimate interest in the application and effectuation of its workers' compensation laws outweighed New Jersey's governmental interest in the application of its own laws, simply did not address the weighing

---

**2.** The contest is so bitter, in fact, that the parties have acted questionably in their submission of briefs and in their arguments. Upon the request of this court that the parties submit supplemental briefs directed to an issue relating to the New Jersey tolling statute, counsel for appellants indicated that there was no need to submit one on appellants' behalf. Appellees did submit a brief, addressing the tolling statute only briefly and then spending the bulk of the brief reviewing the other issues in the case and raising several new issues. Appellants then, without permission of the court, submitted a reply to appellees' brief. In addition, the parties raise extensive arguments on issues that were simply not considered by the bankruptcy court in its decision. Finally, the parties state at the outset that the question is whether the statute of limitations of California, New Jersey, or Nevada should apply—and then abandon any discussion of the Nevada statute.

of such interests in a statute of limitations context. Indeed, *Heavner* is never mentioned in *Eger.* The court concludes that until the New Jersey Supreme Court again addresses the issue of conflicting statutes of limitation the federal courts are bound by the limited holdings of *Heavner* and *O'Keeffe.*

The court's conclusion is consistent with the narrow readings of *Heavner* by the Third Circuit. Beginning with *Henry v. Richardson–Merrell, Inc.,* 508 F.2d 28, 33 (3d Cir.1975), the Third Circuit has emphasized repeatedly that New Jersey has a strong governmental interest in protecting its domiciliaries' compensation rights. Where the allegedly tortious activity and the plaintiffs' residence were out of state, however, New Jersey's interest is not fostered by the application of its statute of limitations. The court in *Henry* articulated the following approach:

> The court determines first the governmental policies evidenced by the laws of each related jurisdiction and second the factual contacts between the parties and each related jurisdiction. A state is deemed interested only where application of its law to the facts in issue will foster that state's policy. This approach does not count up contacts and make quantitative determinations of interest based on which state has the greatest number of contacts. Instead, the qualitative nature of contacts is considered so that only contacts which are likely to promote valid state policies are considered relevant.

*Id.* at 32 (quoted in *Schum v. Bailey,* 578 F.2d 493, 496 (3d Cir.1978)). Notably, the court in *Schum,* in identifying the factual contacts between the parties and each related jurisdiction, stated:

> [I]t is clear that New Jersey's strong interest in protecting compensation rights of its domiciliaries is implicated here. Schum, unlike the plaintiff in *Heavner,* is a domiciliary of New Jersey. Thus New Jersey—which had no interest in protecting any compensation rights of the plaintiff in *Heavner*—has a strong interest in compensating Schum as a domiciliary plaintiff. The New Jersey cases have almost uniformly applied New Jersey law in instances in which the state had a significant compensation interest, *viz.,* where the plaintiff was a New Jersey domiciliary.

578 F.2d at 496 (citations omitted).[3]

Recent Third Circuit decisions affirm the narrowness of the *Heavner* holding, particularly when the plaintiff is domiciled in New Jersey. In *Dent v. Cunningham,* 786 F.2d 173, 177 (3d Cir.1986) the court stated:

> As recently as 1985, a New Jersey court confirmed the state's significant interest in compensating its domiciliaries. *Pine v. Eli Lilly & Co.,* 201 N.J.Super. 186 [492 A.2d 1079] (App.Div.1985). In *Pine* the plaintiff, a New Jersey domiciliary, sued the manufacturer of DES, a corporation doing business in New Jersey, for injuries he received in utero while his mother was administered the drug. The plaintiff was born in New York and resided there for most of his life. He established a New Jersey domicile only after he had discovered that his potential claim was time barred under New York law. *Id.* at 190 [492 A.2d 1079].... Disregarding its policy of discouraging forum shopping, the court applied the New Jersey statute of limitations, finding New Jersey's interest in favor of compensating its domiciliaries "paramount." *Id.* at 193 [492 A.2d 1079] .... The court stated: "In most instances, our courts, as well as the Third Circuit, have favored applying New Jersey

**3.** In *Allen v. Volkswagen of America, Inc.,* 555 F.2d 361 (3d Cir.1977) (per curiam), the Third Circuit identified a second New Jersey interest, namely deterrence of wrongful conduct by a tortfeasor. The court found that "a defendant's incorporation and presence in New Jersey cannot be said, without more, to outweigh California's substantial involvement with the parties and the accident in question." *Id.* at 364. The

deterrence interest cannot by definition be present in this case since there are no undisputed facts linking the defendants to New Jersey. Thus *Allen* is not apposite to this case. Unfortunately no case in New Jersey or the Third Circuit appears to have addressed the viability of New Jersey's other interest, the compensation interest, with respect to a corporate domiciliary where the case arose in another state.

law in tort actions when the plaintiff is domiciled in New Jersey." *Id.*

Because of New Jersey's well recognized interest in compensating its injured domiciliaries, we conclude that this case falls outside the narrow confines of *Heavner*.

Most recently, in *Warner v. Auberge Gray Rocks Inn, Ltee.*, 827 F.2d 938, 941–42 (3d Cir.1987) (citations omitted) the court observed:

> The *Heavner* court was at pains to make plain that its decision did not signal a general abandonment of New Jersey's statutes of limitations in conflicts cases....
>
> In particular, it is clear that when a plaintiff suing on an out-of-state cause of action is domiciled in New Jersey the courts of New Jersey are not disposed to find that, within the meaning of the *Heavner* formulation, "New Jersey has no substantial interest in the matter."

The court concludes that the New Jersey Supreme Court would conclude that a corporate plaintiff which is incorporated in New Jersey is entitled to rely on New Jersey's applicable statute of limitations when filing a suit in New Jersey, notwithstanding the fact that the corporate plaintiff's other ties to New Jersey may be slim.

█ Reach was incorporated in New Jersey when the defendants' actions took place, and the bankruptcy court so found. The court finds persuasive the statement of the New Jersey Supreme Court in *State v. Garford Trucking, Inc.*, 4 N.J. 346, 351, 72 A.2d 851 (1950):

> A corporation created and existing under the laws of New Jersey may have a "commercial domicile" or "business situs" elsewhere for taxation and other purposes; but it is nonetheless domiciled and resident in the state of its creation, for a corporation is domiciled in the state or sovereignty under which it has its being, and there also it has the residence which is inseparable from domicile. A corporation lives and dwells in the jurisdiction whence it derives its existence, although it engages in business elsewhere under local authority.

*Accord, In re Roche*, 16 N.J. 579, 586, 109 A.2d 655 (1954); *Eastern Seaboard Pile Driving Corp. v. N.J. Property–Liability Insurance Guaranty Ass'n*, 175 N.J.Super. 589, 591–92, 421 A.2d 597 (App.Div. 1980); *Red Star Express Lines v. DeStefano*, 104 N.J.Super. 102, 107, 248 A.2d 697 (App.Div.1968). Thus, in electing to incorporate in New Jersey Reach enjoys the governmental interest in compensation as a matter of settled law regardless of the extent of its business in other states.

The court also notes that L. Andrew Bernheim, who is also a plaintiff, was a New Jersey resident up to and including the time this suit was filed, and that Daniel M. Bernheim was a New Jersey resident until the time of his death. In addition, Rancho is by no means the only defendant in this matter, although it may be the most important defendant, and appellants assert vigorously that several codefendants have significant ties to New Jersey. It is unnecessary for this court to resolve the precise extent of these alleged ties, particularly though those alleged ties reinforce the court's conclusion that New Jersey's statute of limitation applies to this case.

This case is an excellant example of the difficulties inherent in determining which state's statute of limitations is applicable. The concern that the bankruptcy court had, and this court now expresses, is not only that forum shopping abuse can take place but that a defendant in a given state cannot in many instances rely on its own state's statute of limitations. This action was instituted nearly eight years after Rancho's board passed its March 22, 1978 resolution, yet under the law of New Jersey the defendants must still face the risks of a lawsuit. Like the Third Circuit in *Warner*, 827 F.2d at 942–43, the court notes that proposals for change are being raised within the American Law Institute, but also like the court in *Warner* this court under the mandate of *Klaxon* is constrained to interpret and enforce New Jersey law. *Id.* at 943. Accordingly, the court finds that New Jersey's six-year statute of limitations applies to this case, and thus summary judgment is inappropriate.

The court also finds that the bankruptcy court's reasoning with respect to the New Jersey tolling statute, N.J.Stat. Ann. § 2A:14–22, is correct and should be followed should the constitutionality of the tolling statute become an issue on remand. Appellants' arguments to the contrary are without merit for two reasons. First, appellants' position is not supported by any case law whatsoever. Second, were appellants' viewpoint adopted the holding of the court in *Coons* II would *de facto* be that *Coons* I is not entirely prospective, since plaintiffs filing after August 3, 1983 would still enjoy the benefit of the tolling statute up to August 3, 1983. That result was clearly not intended by the court in either *Coons* I or *Coons* II.[4]

The parties have set forth extensive arguments in favor of and in opposition to the cross-motions for summary judgment. These arguments relate to issues that were not reached by the bankruptcy court in its decision, and the court will not decide these arguments for the first time on appeal. This case will be remanded to the bankruptcy court for its determination of these issues.

David Fishbone, Edward DiDonato, Philadelphia, Pa., Aris J. Karalis, for trustee.

Dominic Ciarimboli, Greensburg, Pa., trustee.

James J. O'Connell, Philadelphia, Pa., Asst. U.S. Trustee.

---

**4.** In *Robinson v. Visual Packaging,* 705 F.Supp. 216 (1989), this court held that a post-*Coons* version of the New Jersey tolling statute was also unconstitutional. The court's holding, which is presently on appeal to the Third Circuit, as well as two other district court decisions on this question, is not relevant to either the facts or the outcome of this case.